**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL GALEOTTI,**

                                        **Plaintiff,**

        **vs.**                                          **5:12-cv-00900**
                                                         **(MAD/TWD)**

**CIANBRO CORPORATION,**

                                        **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**RIEHLMAN, SHAFER & SHAFER**            **JANE G. KUPPERMAN, ESQ.**
397 Route 281
P.O. Box 430
Tully, New York 13159-0430
Attorneys for Plaintiff

**BROWN, GAVALAS & FROMM, LLP**          **FRED G. WEXLER, ESQ.**
335 Lexington Avenue
New York, New York 10017
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff Michael Galeotti brings this action for negligence against Defendant Cianbro

Corporation for an injury he sustained at work.  Plaintiff is a New York resident, Defendant is a

Maine corporation, and the accident occurred at a job site in Vermont.  Plaintiff has collected

workers' compensation benefits through a policy provided by his direct employer, Air2, LLC.

Air2 was hired as a subcontractor by Defendant to do work on a project that Defendant was hired

to complete.  Defendant claims that, according to the laws of Vermont, a general contractor is

considered the "statutory employer" of the employee of a subcontractor and, therefore, is immune

from suit if workers' compensation benefits have been made available. Plaintiff claims that the law of his domicile, New York, should be applied to the present action. He also claims that the laws of New York allow for a subcontractor's employee to sue a general contractor, even if the employee has the option of collecting worker's compensation benefits.

Defendant has made a motion for Plaintiff's claim to be dismissed according to Federal Rule of Civil Procedure 12(b)(6). Defendant also moves, in the alternative, for summary judgment in the present action. Since Plaintiff responded to Defendant's statement of material facts and submitted matters outside the pleading in opposition to Defendant's motion, the Court will convert the motion to dismiss to one for summary judgment pursuant to Rule 56. *See Smith v. Riccelli Brokerage Services, LLC*, No. 09-CV-00230S, 2011 WL 2007209, *2 (W.D.N.Y. May 23, 2011) (citations omitted). Under the applicable choice of laws analysis, the Court finds that Vermont law applies and subsequently bars Plaintiff's claim. As such, the Court grants Defendant's motion for summary judgment.

## II. BACKGROUND

Defendant is a Maine corporation with its principal place of business in Pittsfield, Maine. *See* Dkt. No. 9-3 at ¶ 2. Defendant is a large contractor that has undertaken operations in many different states, *see* Dkt. No. 12 at 4-7, but Defendant maintains that it has no "permanent offices" in New York State. Dkt. No. 9-3 at ¶ 2. Defendant has a standing contract, established July 10, 2009, with Vermont Transco, LLC ("Transco") to do business for Transco on demand. *See* Dkt. No. 9-3 at ¶ 4; *see generally* Dkt. No. 9-4. Transco is a Vermont limited liability company with its principal place of business in Vermont. *See* Dkt. No. 9-3 at ¶ 5. In this particular instance, Transco requested that Defendant "construct a 345 kV electric transmission line from the

Vermont-Yankee Nuclear Facility near Vernon, Vermont to the Coolidge substation near Ludlow, Vermont." *Id.* at ¶ 7; *see generally* Dkt. No. 9-5. This particular location was near the border of Vermont, New Hampshire, and Massachusetts. *See* Dkt. No. 12-1 at ¶ 11. This agreement was executed on August 12, 2009. *See* Dkt. No. 9-3 at ¶ 6. Under its agreement with Transco, Defendant was allowed to enter into subcontracts with other companies in order to complete its work. *See id.* at ¶ 7; Dkt. No. 9-4 at 7-8.

As per the authority given by its agreement with Transco, Defendant entered into a subcontract with Air2, LLC ("Air2"), a Maryland company. *See* Dkt. No. 9-3 at ¶ 9; Dkt. No. 12-1 at ¶ 5 (confirming that Air2's principal place of business is in Maryland); *see generally* Dkt. No. 9-6. The agreement was entered into on our about October 20, 2009. *See* Dkt. No. 12-4 at ¶ 11. Air2 was hired to "provide helicopter line construction services." *See* Dkt. No. 9-3 at ¶ 9. Defendant claims that this type of work is typically done by Defendant's own employees, but it was more efficient to perform the work using Air2's helicopters. *See id.* at ¶ 7. Plaintiff denies sufficient information to either confirm or dispute Defendant's assertion that it normally does this type of work. *See* Dkt. No. 12-4 at ¶ 14.

Plaintiff is a resident of the state of New York. *See* Dkt. No. 12-1 at ¶ 3; *see also* Dkt. No. 12-4 at ¶ 3. He was hired by Air2 on February 3, 2008, and entered Air2's "apprentice lineman program[ ]" six months after that date. *See* Dkt. No. 12-1 at ¶ 4. Plaintiff was assigned to Defendant's Vermont job site on March 14, 2010. *See id.* at ¶ 6. About a year prior to this assignment, he had done work for Air2 while Air2 was a subcontractor for Defendant on an assignment in Maine. *See id.* at ¶¶ 12-13. While working on this assignment, Plaintiff was on the job for about twenty days at a time, during which he would stay at a hotel in Vermont near the job site. *See id.* at ¶¶ 7-8. In between the twenty-day periods, Plaintiff would return to his home in

New York for ten days at a time.  *See id.* at ¶¶ 7, 9-10.

Plaintiff was injured on April 20, 2010, while doing work for Air2 as part of its subcontract with Defendant.  *See* Dkt. No. 12-4 at ¶¶ 15-16.  Upon being injured, Plaintiff was airlifted to Dartmouth-Hitchcock Medical Center in Lebanon, New Hampshire to receive treatment.  *See* Dkt. No. 12-1 at ¶ 14.  Plaintiff was compensated for his injuries out of a workers' compensation insurance plan maintained by Air2.  *See* Dkt. No. 12-4 at ¶ 17; Dkt. No. 12-1 at ¶ 15; Dkt. No. 12-1 Ex. A, at 5-6; Dkt. No. 9-7 at 2-3.  Air2 was required to maintain this plan under the conditions of its subcontract with Defendant.  *See* Dkt. No. 9-3 at ¶ 11; Dkt. No. 9-6 at 9.  The workers' compensation plan maintained by Air2 had to be in compliance with Vermont law in order to satisfy the agreement between Air2 and Defendant.  *See* Dkt. 12-4 at ¶¶ 8-9; Dkt. No. 9-3 at ¶ 11; Dkt. No. 9-6 at 9.

Plaintiff alleges that Air2's workers' compensation benefits are administered by a Tennessee company under the laws of Tennessee.  *See* Dkt. No. 12-4 at pg. 3, ¶ 1.  Plaintiff is currently receiving the maximum benefits allowed by his policy.  *See id.* at pg. 3, ¶ 2.  Plaintiff claims that if his policy were being paid by a Vermont insurer, he would be entitled to more benefits, *see id.* at pg. 4, ¶ 3; specifically, an additional $20.00 per week because of his two children.  *See* Dkt. No. 12-1 at ¶ 18; Dkt. No. 12 at ¶ 8.  Defendant also maintained workers' compensation insurance in compliance with Vermont law that is available to Plaintiff.  *See* Dkt. No. 9-3 at ¶ 8; Dkt. No. 13 at 8.  Plaintiff does not dispute that this insurance is available to him but denies sufficient information as to whether or not Defendant's policy complies with Vermont law.  *See* Dkt. No. 12-4 at ¶ 10.

# III. DISCUSSION

**A.    Standard of Review**

### *1. Rule 12(b)(6) Dismissal for Failure to State a Claim*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007); *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent, N.Y.*, No. 11 Civ. 2875, 2012 WL 3024766, *3-4 (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient facts "to 'sho[w] that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[.]" *Id.* at 570.


### 2. *Summary Judgment*

According to Rule 12 of the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Since Defendant moved for summary judgment in the alternative thereby giving Plaintiff notice that the motion may be treated as one for summary judgment, and because Plaintiff submitted affidavits, exhibits and a counter-statement of material facts in response to Defendant's motion, the Court finds that it may properly treat Defendant's motion as one for summary judgment.  *See Janneh v. Runyon*, 932 F. Supp. 412, 415 & n.2 (N.D.N.Y. 1996).[1]

---

[1] The decision to treat Defendant's motion as one for summary judgment is further supported by the fact that Plaintiff has not argued that it is premature for such a motion and because Defendant's motion is not targeted to the merits of Plaintiff's underlying negligence claim.  Rather, Defendant's motion requires the Court to conduct a choice of law analysis and determine whether, based on information that is equally available to both parties, New York or Vermont law should be applied.  Although this is primarily a legal analysis, the additional facts

(continued...)

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Not all facts, however, are relevant. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Where the non-movant either does no respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting

---

[1](...continued)
included in the parties' statements of material fact are necessary for the Court to conduct its analysis.

7

convenience for facts").

**B.**    **Choice of Laws Analysis**

Federal courts considering diversity cases are to apply the choice of law rules established by the law of their forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4-5 (1975); *see also Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). Therefore, New York's choice of law rules apply to this case.

"Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). When the state's highest court has yet to make a definitive ruling on a specific issue, the court "must apply what [it] find[s] to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* (quoting *Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967).

**1. *Actual Conflict of Laws Exists***

The first step in New York's choice of law inquiry is to establish whether or not there is a conflict between the laws of the different jurisdictions involved in the case. *See In re Allstate Ins. Co. (Solarz)*, 81 N.Y.2d 219, 223 (1993); *see also Forest Park Pictures*, 683 F.3d at 433 (citation omitted). A conflict between the laws of two different jurisdictions arises when each jurisdiction prescribes "different substantive rules[.]" *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citation omitted). If there is no conflict, then a choice of laws analysis is entirely unnecessary,

and the forum state may apply its own law to the case at hand, so long as the forum state is one of the relevant jurisdictions. *See IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143-44 (2d Cir. 2004) (citation omitted); *Trolone v. Lac D'Amiante Du Quebec, Ltee*, 297 A.D.2d 528, 528 (1st Dep't 2002), *aff'd* 99 N.Y.2d 647 (2003) (affirming the trial court's rejection of a choice of laws analysis and subsequent use of New York law, despite appellant's assertion that New Jersey law be used, because there was "no relevant conflict" between the applicable laws of New York and New Jersey).

Both parties agree that the relevant laws of New York and Vermont conflict in this case. *See* Dkt. No. 9-1 at 20; Dkt. No. 12-3 at 6-8. The differences in the two states' approaches are outlined below.

### a. New York Law

New York law forbids an employee from suing his or her employer when the employer has provided access to the required workers' compensation. *See* N.Y. Workers' Comp. Law § 11 (Consol. 2013). A general contractor is not, however, considered the employer of a subcontractor's employee and, therefore, can be sued by such an employee in accordance with New York law. *See Sweezey v. Arc Elec. Const. Co.*, 295 N.Y. 306, 311 (1946) ("Since the general contractor has always been deemed to be a third party with respect to the subcontractor's employee, it follows that the latter can bring an action for negligence against the general contractor"); *Clark v. Monarch Eng'g Co.*, 248 N.Y. 107, 111-12 (1928). Since Plaintiff worked for a subcontractor hired by Defendant, a general contractor, New York law would allow his lawsuit against Defendant to go forward.

### b. *Vermont Law*

Like New York, Vermont requires private employers to provide workers' compensation for their employees. *See* Vt. Stat. Ann. tit. 21, § 687 (2012). Also like New York, Vermont guarantees the employer immunity from suit for complying with the workers' compensation requirement. *See* Vt. Stat. Ann. tit. 21, § 622 (2012). Unlike New York, Vermont forbids lawsuits by subcontractors' employees against general contractors. *See King v. Lowell*, 160 Vt. 614, 614-15 (1993) (holding that a general contractor was a statutory employer of the subcontractor's employee and, therefore, owed benefits to the employee); *King v. Snide*, 144 Vt. 395, 401 (1984) (holding that amendments to Vermont's workers' compensation laws were specifically designed to create the statutory employer-employee relationship between a general contractor and a subcontractor's employee in order to prevent "general contractors from relieving themselves under the Workers' Compensation Act by doing through independent contractors what they would otherwise do through their direct employees").

The Vermont statute clearly states, and the Vermont Supreme Court has affirmed, that there are two exceptions to the general bar against tort liability when workers' compensation is available. *See* Vt. Stat. Ann. tit. 21, § 622 (2012); *Smedberg v. Detlef's Custodial Serv., Inc.*, 182 Vt. 349, 361 (2007). The first of these exceptions is 21 V.S.A. § 618(b), which allows an employee to sue his or her employer if the employer has failed to provide the required insurance. *See* Vt. Stat. Ann. tit. 21, § 618(b) (2012); Vt. Stat. Ann. tit. 21, § 687 (2012). The second of these exceptions is 21 V.S.A. § 624, which allows an employee to bring a lawsuit against a third party who is not considered his or her employer according to 21 V.S.A. § 601(3). *See* Vt. Stat. Ann. tit. 21, § 624 (2012); Vt. Stat. Ann. tit. 21, § 601(3) (2012).

The first of these exceptions is not applicable in this case. Defendant abided by

10

Vermont's requirements by providing a workers' compensation insurance policy with Travelers Indemnity Company of America.  *See* Dkt. No. 9-3 at ¶ 8.  Additionally, the agreement between Defendant and Air2 required that Air2 provide workers' compensation insurance for its employees.  *See* Dkt. No. 9-3 at ¶ 11; Dkt. No. 9-6 at 8-9.  Air2 did, in fact, provide the insurance that was required and issued a Certificate of Liability Insurance to Defendant.  *See* Dkt. No. 9-3 at ¶ 12; Dkt. No. 9-7 at 2-3.  Given this evidence, Plaintiff could not invoke 21 V.S.A. § 618(b) if Vermont law were found to apply to this case.

The second exception also does not apply to this case.  As already stated, a general contractor is a statutory employer of a subcontractor's employee, so Defendant cannot be considered a third party.  *See King v. Lowell*, 160 Vt. 614, 614 (1993).  The general test to determine whether or not an employer-employee relationship exists under Vermont law is "whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of business." *Edson v. State*, 175 Vt. 330, 332 (2003).  Defendant usually performs the type of work that Air2, Plaintiff's employer, was hired to do; Defendant simply chose to hire Air2 because Air2's helicopters would enable the work to be completed more efficiently.  *See* Dkt. No. 9-3 at ¶ 10; Dkt. No. 9-2 at ¶ 14.  Plaintiff does not specifically deny that Defendant ordinarily does the type of work that Air2 was hired to do.  *See* Dkt. No. 12-4 at ¶ 14.  Plaintiff also devoted no portion of his brief to arguing that Air2 was hired to do any work that Defendant would not typically do. Furthermore, even in situations in which a general contractor does not typically engage in the activity that a subcontractor is hired to do, employer-employee relationships have been found between the general contractor and the subcontractor's employees, so long as the subcontractor was hired to do work "central to [the defendant's] successful completion of [its] project." *In re*

11

*Chatham Woods Holdings, LLC*, 184 Vt. 163, 172 (2008).  Plaintiff does not attempt to argue that the work Air2 was hired to do was not central to the project's completion.  Since Air2 was hired to complete a task that Defendant needed to complete, Defendant is Plaintiff's statutory employer, and the exception in 21 V.S.A. § 624 does not apply.

It is clear that Vermont law would forbid Plaintiff from bringing his lawsuit against Defendant.[2]  Since the laws of the two jurisdictions lead to diametrically opposite conclusions about Plaintiff's ability to sue Defendant, the two laws conflict, and a choice of laws analysis is necessary.

### 2.  Significant Contacts Point to New York and Vermont

New York noted long ago that the traditional choice of law procedure, which simply applied the law of the jurisdiction where the tort occurred, produced "unjust and anomalous results."  *Babcock v. Jackson*, 12 N.Y.2d 473, 484 (1963).  In order to avoid such results, the New York Court of Appeals shifted to a "[c]omparison of the relative contacts and interests" of the conflicting jurisdictions.  *Id.* at 482 (internal quotation marks omitted).  Such an analysis attempts to ensure that "the law of the jurisdiction having the greatest interest in the litigation will be applied[,]" rather than the law of the jurisdiction where the tort occurred, which may find itself rather disinterested in the outcome of the case.  *Miller v. Miller*, 22 N.Y.2d 12, 15-16 (1968).

Once it becomes apparent that there is an actual conflict of law, the New York choice of laws procedure prescribes two initial questions that must be answered: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the

---

[2] In his response to Defendant's motion, Plaintiff appears to concede that his claim must fail is Vermont law is applied.

law is to regulate conduct or allocate loss." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994). In answering this first question, it is generally asserted that "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort[.]" *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197 (1985). Some lines of more specialized cases, however, have identified other types of relevant contacts that should also be analyzed when applicable. Specifically, in workers' compensation cases, "other significant contacts to consider are the state where the conduct causing the injury occurred, the state where the relationship between the parties is centered, and . . . the state where the plaintiff has accepted workers' compensation benefits." *Van Dyke v. Columbia Mach., Inc.*, 246 F. Supp. 2d 191, 193 (W.D.N.Y. 2003) (citing *Roach v. McGuire & Bennett, Inc.*, 146 A.D.2d 89, 93-94 (3d Dep't 1989)) (internal citation omitted).

        In the case at hand, Plaintiff is a New York resident, *see* Dkt. No. 12-4 at ¶ 3, Defendant is a Maine corporation, *see id.* at ¶ 1, and Plaintiff's injuries were sustained in Vermont. *See id.* at ¶¶ 4, 15. Defendant was the general contractor of a construction project that was funded by Vermont Transco, a Vermont limited liability company. *See id.* at ¶ 4-5. Defendant entered into a subcontract with Air2, *see id.* at ¶ 11, Plaintiff's employer, *see* Dkt. No. 12-1 at ¶ 4, a Maryland company. *See* Dkt. No. 12-4 at 12. The allegedly negligent behavior that allegedly caused Plaintiff's injuries occurred in Vermont. *See* Dkt. No. 1 at ¶ 16. The state where the relationship between the parties centered is perhaps up for some debate. Other than his assignment in Vermont giving rise to this case, Plaintiff had worked for Air2 while it was a subcontractor for Defendant on an assignment in Maine. *See* Dkt. No. 12-1 at ¶ 13. This previous assignment took place about a year prior to the events of this case. *See id.* Finally, Plaintiff has accepted workers' compensation benefits provided by Air2 and administered under Tennessee law. *See id.* at ¶ 15-16; Dkt. No. 12-1 Ex. A, at 5-6.

As listed immediately above, several different jurisdictions have been implicated in this case, among them Maine, Maryland, New Hampshire, New York, Tennessee, and Vermont. Plaintiff asks the Court to apply the law of New York.  *See* Dkt. No. 12-3 at 10.  Defendant asks the Court to apply the law of Vermont.  *See* Dkt. No. 9-1 at 14.  Neither Plaintiff nor Defendant asks the Court to apply the law of Maine, Maryland, New Hampshire, or Tennessee in any portion of their briefs.  Since none of the parties have argued that the laws of these four states should be applied, the Court may treat the choice of laws as being only between New York and Vermont. *See, e.g.*, *Schultz*, 65 N.Y.2d at 195, 201-02 (1985) (after pointing out that one of the defendants, the Brothers of the Poor of St. Francis, Inc., had chosen not to argue for the application of the unfavorable law of its domicile, Ohio, the court proceeded with its choice of laws analysis without considering the possible applicability of Ohio law); *Gleason v. Holman Contract Warehouse*, 250 A.D.2d 339, 340-42 (3d Dep't 1998) (indicating that the third-party defendant was a Kentucky corporation but undertaking a choice of laws analysis for a dispute between the defendant and the third-party defendant without considering Kentucky law because the third-party defendant only sought to apply the law of New Hampshire, the locus state).

### 3.  *Distinction Between "Conduct-Regulating" and "Loss-Allocating"*

The second inquiry outlined by *Padula* requires the Court to determine whether the applicable law is "conduct-regulating" or "loss-allocating" before the interests of the different jurisdictions are measured and balanced.  *Schultz*, 65 N.Y.2d at 198, 200; *see Padula*, 84 N.Y.2d at 521.  "Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring."  *Padula*, 84 N.Y.2d at 522.  "Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs . . . ."  *Id.*  The New York

Court of Appeals has specifically determined that workers' compensation contribution disputes, such as the present case, are loss-allocating. *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 74-75 (1993). Disputes over the applicability of some provisions of the New York Labor Law, *see, e.g.*, N.Y. Lab. Law §§ 240-41 (Consol. 2013), particularly those involving the intersection of workers' compensation and an employer's responsibility to provide scaffolding, have been determined to be at least partially conduct-regulating rather than entirely loss-allocating. *See, e.g.*, *Padula*, 84 N.Y.2d at 522-23; *Mihalic v. K-Mart of Amsterdam, N.Y. Distrib. Ctr., Inc.*, 363 F. Supp. 2d 394, 403 (N.D.N.Y. 2005) (citation omitted); *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872, 878 (W.D.N.Y. 1992) (citing *Salsman v. Barden & Robeson Corp.*, 164 A.D.2d 481, 484-85 (3d Dep't 1990)). Other workers' compensation cases in which an employer attempts to assert a lien on an employee's subsequent tort actions against a third party have also been treated as conduct-regulating, though without much explanation for the departure from the typical loss-allocation framework. *See, e.g.*, *Woodall v. Rich Albany Hotel, LLC*, No. 1:11-CV-449, 2012 U.S. Dist. LEXIS 50855, *21 (N.D.N.Y. Apr. 11, 2012); *McDuffie v. Wilner*, 415 F. Supp. 2d 412, 420 (S.D.N.Y. 2006). Since none of these exceptions to the general loss-allocation nature of workers' compensation claims are relevant, this case will be analyzed as exclusively loss-allocating. Both parties are in agreement that the relevant regulations are loss-allocating. *See* Dkt. No. 9-1 at 20 n.5; Dkt. No. 12-3 at 13-14.

### 4. Application of Loss-Allocation Analysis

The New York Court of Appeals created a three-prong choice of law analysis specifically designed for loss-allocating rules in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972). The use of this analysis was recently reaffirmed in *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 321-

22 (2011).  Basically, three different rules are applied to loss-allocation choice of law cases, depending on the circumstances of the case.  The first rule dictates that when both the plaintiff and the defendant are domiciled in the same jurisdiction, New York courts will apply the law of the shared domicile, even though the tort at issue occurred in a different jurisdiction.  *See Neumeier*, 31 N.Y.2d at 128.  The second rule deals with cases in which the plaintiff and the defendant are domiciled in different states, the tort at issue took place in one of those states, the law of the plaintiff's domicile favors the plaintiff, and the law of the defendant's domicile favors the defendant.  *See id.*  In such cases, New York courts will apply the law of the jurisdiction in which the tort occurred, otherwise known as the locus state.  *See id.*  The third rule deals with all other split-domicile cases.  *See id.*  This includes cases in which the plaintiff is domiciled in one state, the defendant is domiciled in another state, and the tort at issue occurred in a third state, the locus state.  *See id.*  In such cases, New York courts should presume that the law of the locus state applies.  See *id.*  In certain instances, however, New York courts may apply the law of a different jurisdiction "if it can be shown that displacing the normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants."  *Id.*

Since Plaintiff is a New York resident, Defendant is a Maine company, and the locus state is Vermont, both parties appropriately agree that the third *Neumeier* rule applies to this case.  *See* Dkt. No. 9-1 at 21; Dkt. No. 12-3 at 15.

### a. Presumption in Favor of Vermont Law

Given that the third *Neumeier* rule applies to the case at hand, it is presumed that the law of Vermont, the locus state, governs.  Deference to the law of the locus state is supported by New

York's case law dealing with workers' compensation choice of law disputes.  *See Greene-Wotton v. Fiduciary Trust Co. Int'l*, 324 F. Supp. 2d 385, 389-92 (S.D.N.Y. 2003) (finding that New York workers' compensation laws barred the decedent's negligence claim against her husband's employer in a case in which the plaintiff-employee was domiciled in New Jersey, the defendant-employer was assumed to be a California corporation, and the tort occurred in New York); *Burnett v. Columbus McKinnon Corp.*, 69 A.D.3d 58, 59, 62-64 (4th Dep't 2009) (workers' compensation inquiry as to whether the plaintiff's employer could be considered a nonparty defendant for comparative fault purposes; the plaintiff-employee was from Ohio, the defendant-manufacturer from New York, the nonparty-employer owned the factory in Indiana where the tort occurred; Indiana law was applied);  *Gleason*, 250 A.D.2d at 340-42 (third-party workers' compensation contribution claim involving a New York plaintiff-employee, a foreign defendant-corporation, a Kentucky third-party defendant-employer, and a tort occurring in New Hampshire; New Hampshire law was applied).

The presumption in favor of Vermont law is strengthened by the fact that New York has previously applied the locus state's law in a workers' compensation loss-allocation case in which both the plaintiff and the defendant were domiciled in the same state, and thus the first *Neumeier* rule would dictate that the law of the shared domicile applies.  *See Roach v. McGuire & Bennet, Inc.*, 146 A.D.2d 89, 93-94 (3d Dep't 1989).  In *Roach*, the defendant was a New York general contractor, who had hired a subcontractor to do work at a Pennsylvania work site.  The subcontractor hired the plaintiff, a New York resident, to work at that same site.  *See id.* at 90. The plaintiff was injured while working at the Pennsylvania work site and brought a lawsuit against the defendant.  *See id.*  New York law allowed for a subcontractor's employee to sue a general contractor, but Pennsylvania law did not.  *See id.*  Expressly rejecting the conclusion of

the first *Neumeier* rule in this instance, the court chose to apply the law of Pennsylvania rather than the law of New York, the parties' shared domicile.  *See id.* at 93 ("[W]e conclude that Pennsylvania's interest in having its workers' compensation law apply to an industrial accident occurring within Pennsylvania outweighs New York's interest in having its workers' compensation statute apply to an action involving New York domiciliaries").  The fact that New York has chosen to apply the law of the locus state to a case involving the first *Neumeier* rule, in which the joint domicile would have a greater interest in applying its law than either of the domiciles in a case involving the third *Neumeier* rule, shows that the presumption in favor of the locus state's law in workers' compensation cases is a strong presumption.

In opposition to Defendant's motions, Plaintiff's brief cites only one true loss-allocation workers' compensation claim in which the locus state's law was rejected in favor of the law of the employee's domicile.  *See* Dkt. No. 12-3 at 17 (citing *Van Dyke v. Columbia Mach., Inc.*, 246 F. Supp. 2d 191 (W.D.N.Y. 2003)).  Ordinarily, this would call into question Defendant's arguments, but the facts of that particular case are so extraordinarily unique that they are easily distinguishable from the present matter.

*Van Dyke* is indeed a case in which the third *Neumeier* rule was applied.  *See Van Dyke*, 246 F. Supp. 2d at 194.  The plaintiff was a Pennsylvania resident who was injured at work by a machine manufactured by the defendant, a Washington corporation with its principal place of business in Vancouver, Washington.  *See id.* at 191-92.  The plaintiff's injury occurred while he was working at his employer's cheese processing plant.  *See id.*  The employer was a Colorado corporation with plants across the United States.  *See id.*  The particular plant at which the plaintiff worked was, quite unusually, located directly on the New York-Pennsylvania border. *See id.* at 192.  Given this remarkable situation, the plaintiff, though a Pennsylvania resident, was

actually injured while working in the New York portion of the plant, making New York the locus state for purposes of the lawsuit.  *See id.*  When the plaintiff brought a strict products liability lawsuit against the defendant, the defendant attempted to implead the plaintiff's employer in the hopes of recouping some of its losses.  *See id.*  New York law allowed for third-party indemnification of an employer in instances in which the plaintiff-employee had suffered "grave injury," but Pennsylvania law categorically forbid such indemnification absent the employer's written consent.  *Id.* at 194-96.  The defendant insisted that New York law should apply to the dispute in order to permit the impleader because New York was the locus of the tort.  *See id.* at 192.  The court, however, rejected the defendant's contention and applied the laws of Pennsylvania, determining that New York being the locus state was "pure happenstance" – the result of a coincidence that the plaintiff happened to be working in the New York portion of the plant on the day he was injured.  *See id.* at 196.  Ultimately, the court found Pennsylvania law to be more appropriate because that was the state in which the plaintiff was domiciled and the state that operated the workers' compensation fund into which his employer paid.  *See id.* (citation omitted).

Given New York's strong above-mentioned tendency towards applying the law of the locus jurisdiction to workers' compensation claims, *Van Dyke* is most easily explained by the unique circumstances under which the Pennsylvania plaintiff ended up working in a plant that was partially in Pennsylvania and partially in New York.  Other loss-allocation cases not dealing with workers' compensation have also rejected the law of the locus state when the tort's occurrence in that state was merely "fortuitous."  *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12-14 (2d Cir. 1996) (holding that the locus jurisdiction's law should not apply because the accident was caused by a bomb exploding aboard a plane that was mid-flight);

*Rakaric v. Croatian Cultural Club Cardinal Stepinac Org.*, 76 A.D.2d 619, 628-29 (2d Dep't 1980) (distinguishing between "fixed location" cases in which application of the locus jurisdiction's law is almost inevitable and "transient" cases in which courts are more likely to defer to the law of either the plaintiff's or the defendant's domicile). The plaintiff in *Van Dyke*, who was constantly moving in and out of New York and Pennsylvania, perhaps multiple times a day, as he worked directly on the border, was certainly more transient than Plaintiff. Plaintiff made the decision to take an assignment in Vermont and spent twenty days at a time working there and staying in a hotel. *See* Dkt. No. 12-1 at ¶¶ 7-8. Though Plaintiff's work site was, like the *Van Dyke* plaintiff's, located near the state's border, Plaintiff's work site was situated near the shared border of Vermont, New Hampshire, and Massachusetts, not the shared border of Vermont and New York. *See* Dkt. No. 12-1 at ¶ 11. As such, Plaintiff's reliance on *Van Dyke* for the application of New York law is misplaced.

Vermont law is the law that New York courts would presumptively apply in accordance with the third *Neumeier* rule. In order to apply New York law to his case, Plaintiff will have to provide sufficient reasons for this presumption to be discarded.

### b. Plaintiff's Arguments Rebutting the Presumption of Vermont Law are Insufficient

#### i. The Third Neumeier Exception Viewed as a Whole

As already stated, the third *Neumeier* rule's presumption in favor of the law of the locus jurisdiction can be rebutted in favor of the law of either party's domicile "if it can be shown that displacing the normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Neumeier*, 31 N.Y.2d at 128. For the reasons discussed below, Plaintiff has not

provided sufficient evidence to rebut the third *Neumeier* rule's presumption that Vermont law

applies to his suit.

      The seminal case for the third *Neumeier* rule's occasional rejection of the locus state's

laws is *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189 (1985).  In *Schultz*, the plaintiffs were

residents of New Jersey and had various dealings with the Brothers of the Poor of St. Francis, Inc.

*See id.* at 192-93.  One of the Franciscan Brothers was the plaintiffs' Boy Scout troop leader and

abused the plaintiffs on various occasions, including once on a camping trip in upstate New York.

*See id.* at 193.  The physical and emotional abuse eventually led one of the plaintiffs to commit

suicide while at home in New Jersey.  *See id.*  Plaintiffs brought a lawsuit against the Franciscan

Brothers, alleging negligent hiring of the abusive priest.  *See id.*  New Jersey's charitable

immunity laws, however, would have shielded the Franciscan Brothers from suit, so the plaintiffs

argued that New York law, which rejected the doctrine of charitable immunity, should be applied.

*See id.* at 194.  The court explained that the third *Neumeier* rule created a presumption that the

laws of New York, the locus state, would apply, but this presumption was promptly rejected in

favor of New Jersey's law enforcing charitable immunity.  *See id.* at 201-02.  The court stated the

following regarding the third *Neumeier* rule's exception:

> [A]lthough application of New Jersey's law may not affirmatively
> advance the substantive law purposes of New York, it will not
> frustrate those interests because New York has no significant
> interest in applying its own law to this dispute.  Finally, application
> of New Jersey law will enhance the smooth working of the multi-
> state system by actually reducing the incentive for forum shopping
> and it will provide certainty for the litigants whose only reasonable
> expectation surely would have been the law of the jurisdiction
> where plaintiffs are domiciled and defendant sends its teachers
> would apply . . .

*Id.* (footnote omitted) (internal quotation marks omitted).  This holding was later adopted by the

Second Circuit, which declined to adopt the law of the locus state in favor of the law of the

defendant's domicile in *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109-12 (2d Cir. 2003), another charitable immunity case. Plaintiff's brief invokes both *Schultz* and *Gilbert* in its arguments that the third *Neumeier* rule's presumption in favor of Vermont law should be rejected. *See* Dkt. No. 12-3 at 15-17. Both cases are inapplicable because their holdings are peculiar to charitable immunity, and New York has not adopted analogous reasoning in workers' compensation cases to reject the law of the locus state.

Furthermore, the New York Court of Appeals has recently indicated that much of the reasoning used in *Schultz* and *Gilbert* is disfavored. *See Edwards*, 17 N.Y.3d at 331. *Edwards* dealt with a case in which the state appellate court had used a formulaic, conclusory reiteration of the exception to the third *Neumeier* rule's presumption, similar to the language from *Schultz* quoted above, to reject the application of the locus state's law. *See id.* at 327; *Schultz*, 65 N.Y.2d at 201-02. Reversing the Appellate Division, the Court of Appeals explained that the determinative reasoning in *Schultz* was that the vast majority of the contacts between the plaintiffs and the Franciscan Brothers occurred in New Jersey, with only one isolated contact in New York. *See Edwards*, 17 N.Y.3d at 331; *Schultz*, 65 N.Y.2d at 202 (explaining that the contacts between the plaintiffs and the Franciscan Brothers in New York were only "isolated and infrequent"). This decision in *Edwards* dictates that the analogous reasoning in *Gilbert* is the Second Circuit's only still-controlling reasoning for the rejection of the locus state's law. *See Gilbert*, 332 F.3d at 111 (explaining that the plaintiff's most frequent contacts with the defendant were in New Jersey, the defendant's home state, rather than in New York, the state in which the plaintiff suffered his injury).

*Edwards'* shift in focus to the predominance of contacts outside of the locus state is of little help to Plaintiff, who seeks to apply New York law. While working on this assignment, the

vast majority, if not all, of the contacts between Plaintiff and Defendant occurred while Plaintiff was working in Vermont. *See* Dkt. No. 12-4 at ¶¶ 4, 15. Plaintiff has put forth evidence that he worked for Defendant on a previous assignment in Maine, one year prior to the events of this case. *See* Dkt. No. 12-1 at ¶ 13. While this is evidence that not all of Plaintiff's contacts with Defendant have been in Vermont, it is not evidence that any of their contacts occurred in New York. There may have been some contacts between Defendant and Plaintiff in New York, perhaps when Plaintiff would return home for ten days at a time when he was no longer on shift, in order to summon him back to the work site. *See id.* at ¶¶ 7-10. It is, however, more likely that Plaintiff corresponded more often with Air2, his direct employer, during those times. *See id.* at ¶ 4. Plaintiff neither provides evidence, nor alleges any correspondence with Defendant while at home. The intensity of Plaintiff's contacts, if any, with Defendant that occurred in New York simply do not rise to the level of intensity displayed in *Schultz* and *Gilbert*. Plaintiff's attempt to rebut the third *Neumeier* rule's presumption that Vermont law applies to his lawsuit is, therefore, unavailing.

For additional reasons other than those already stated, Plaintiff's reliance of *Gilbert* is misplaced. While *Gilbert's* most conspicuous holding was, in fact, a rejection of the locus state's tort law through the exception allowed by the third *Neumeier* rule, *see Gilbert*, 332 F.3d 105 at 111-12, the decision was reached through reasoning that explicitly rejected an argument analogous to the one Plaintiff currently makes. In *Gilbert*, the Second Circuit rejected the law of the locus jurisdiction, New York, in favor of the law of the defendant's jurisdiction, New Jersey. *See id.* at 110-11. The plaintiff in *Gilbert* sought to apply the law of his domicile, Connecticut. *See id.* at 111. The Second Circuit specifically declined to apply Connecticut's law, explaining that, under the third *Neumeier* rule, New York courts typically only apply the plaintiff's

23

jurisdiction's law in place of the locus jurisdiction's law if the tort's occurrence in the locus jurisdiction was merely "fortuitous." *Id.* (citing *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12-14 (2d Cir. 1996) (holding that the locus jurisdiction's law should not apply because the accident was caused by a bomb exploding aboard a plane that was mid-flight). *Gilbert* involved a Seton Hall student's injury while competing in a rugby match at St. John's University in New York. *See id.* at 108.  The Second Circuit concluded that taking part in the match was a conscious, voluntary decision on the part of the plaintiff, making his injury in New York anything but "fortuitous," and precluding his attempt to invoke the charitable immunity laws of his domicile, Connecticut.  *Id.* at 111; *see also Huang v. Lee*, 734 F. Supp. 71, 73 (E.D.N.Y. 1990) (holding that the plaintiff's decision to enter New Jersey in order to spend only a single night at his uncle's house was too deliberate to be considered "fortuitous").  The Second Circuit's entirely separate decision to apply the laws of the defendant's home state instead of the laws of the locus state in no way suggested a reprieve for the plaintiff's discarded argument.  Any assertions to the contrary in Plaintiff's brief, *see* Dkt. No. 12-3 at 17, are based on a misunderstanding of the Second Circuit's holding in *Gilbert*.

Like the plaintiff in *Gilbert*, Plaintiff attempts to invoke the laws of his domicile, New York, instead of the laws of the locus state, Vermont.  *See* Dkt. No. 12-3 at 10.  For the same reasons as in *Gilbert*, 332 F.3d 105 at 111, Plaintiff's argument must be rejected.  The *Gilbert* plaintiff's contact with the state of New York consisted of his participation in a single rugby game, yet the brevity of this contact did not give rise to it being considered "fortuitous."  *See id.* at 108, 111.  Plaintiff was assigned to Defendant's job site in Vermont "on or about March 14, 2010."  *See* Dkt. No. 12-1 at ¶ 6.  Plaintiff's accident took place on April 21, 2010.  *See* Dkt. No. 1 at ¶ 14.  Between that time, Plaintiff's "schedule for work was twenty days on and ten days off."

24

Dkt. No. 12-1 at ¶ 7.  Based on this information, Plaintiff had a connection with Defendant's Vermont job site for a period of thirty-nine days, much longer than the single rugby match at issue in *Gilbert*.  *See Gilbert*, 332 F.3d at 108.  Additionally, Plaintiff's information suggests that at some point during this thirty-nine-day period he returned home to New York for a period of ten days and then consciously and voluntarily returned to the Vermont job site.  *See* Dkt. No. 12-1 at ¶¶ 7-9.  This behavior is in stark contrast to the behavior displayed in *Gilbert*, in which the Second Circuit analyzed only a single decision made by the plaintiff to enter the locus jurisdiction.  It would, therefore, seem that the reasoning used by the Second Circuit in refusing to invoke the law of the plaintiff's domicile in *Gilbert* would apply *a fortiori* to Plaintiff's case.  *See Gilbert*, 332 F.3d at 108.

### ii.  *Advancing the Jurisdictions' Relevant Substantive Law Purposes*

Plaintiff claims that because Vermont's substantive law is concerned with "ensuring that injured workers are protected[,]" he should be entitled to recover greater damages from Defendant.  *See* Dkt. No. 12-3 at 15.  This ignores the fact that Vermont made the choice to use its substantive law to protect employers from suit.  The Vermont Supreme Court has identified the workers' compensation law as a "quid pro quo" in which "the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy."  *Lorrain v. Ryan*, 160 Vt. 202, 214 (1993) (citation omitted).  New York's workers' compensation laws similarly aim to protect employers from excess liability, not just to provide recovery for employees.  *See Mihalic*, 363 F. Supp. 2d at 402 (explaining that the New York State Legislature, through the Omnibus Workers' Compensation Reform Act of 1996, explicitly took action to overturn a New York Court of Appeals decision

25

that opened up employers to greater liability in the workers' compensation realm).  To claim that Vermont workers' compensation law has only one goal – the compensation of the worker – is to misstate the law.

Plaintiff acknowledges that "there is no question that [he] received basic compensation such that the purposes of both the New York and Vermont Workers' Compensation statutes, in providing expeditious coverage to an injured employee, were met."  *See* Dkt. No. 12-3 at 13.  He then claims that because Vermont law has been satisfied, he should be allowed the extra recovery available to him under New York law, namely, the right to sue Defendant as a general contractor. *See id.*  Since this incorrectly reduces Vermont law to only one substantive purpose, the compensation of the employee, Plaintiff is mistaken in his belief that extra compensation would not frustrate the substantive purposes of Vermont law.

Plaintiff claims that the purposes of Vermont law are being circumvented and that he is receiving lesser benefits through Air2, his employer, than he is entitled to under Vermont law. *See* Dkt. No. 12-3 at 13.  Specifically, Plaintiff maintains that, by administering his policy under the laws of Tennessee, Air2 is depriving him of $20.00 per week in additional benefits derived from his having two children.  *See* Dkt. No. 12 at ¶ 8 (citing Vt. Stat. Ann. tit. 21, § 642 (2012)); Dkt. No. 12-1 at ¶ 18.  Despite this, Plaintiff does not specifically allege that the workers' compensation plan he has received violates Vermont law.  *See* Dkt. No. 12-4 at ¶ 10 (denying sufficient information to either admit or deny that Defendant's workers' compensation arrangement has complied with Vermont law).  Additionally, in his argument that the substantive law of Vermont would not be impaired by application of New York law, Plaintiff appears to admit that Vermont law was not broken in any way.  *See* Dkt. No. 12-3 at 16.  Local Civil Rule 7.1(a)(3) dictates that "[t]he Court shall deem admitted any properly supported facts set forth in

the Statement of Material Facts that the opposing party does not specifically controvert."  Since Defendant has provided evidence that such a policy was available at the time of Plaintiff's injury, *see* Dkt. No. 9-3 at ¶ 8, Plaintiff cannot defeat Defendant's motion by calling the legality of the policy into question without making specific allegations, supported by some sort of legal authority.

Absent an explicit attempt by Plaintiff to claim that Defendant is violating Vermont law, there is no evidence that piercing Defendant's typical immunity from suit under Vermont law would further Vermont's substantive legal goals.  Although the Court takes no position on this point, Plaintiff may have recourse against his employer, Air2, if the workers' compensation policy it provided under Tennessee law violated Air2's obligations under Vermont law.  In such an event, Defendant claims that Plaintiff would have the right to collect from its own workers' compensation fund, *see* Dkt. No. 13 at 12, but Plaintiff may not simply opt to sue Defendant instead.  *See Edson*, 175 Vt. at 334 ("[I]t is the statutory employer's potential liability, not its actual payment of workers' compensation benefits, that makes the employer immune from an inured employee's third-party tort suit") (citations omitted).

Since Plaintiff offers no consistent argument as to why his other potential means of recovery are being wrongfully closed to him, he has failed to rebut the third *Neumeier* rule's presumption that Vermont law applies to his lawsuit.

### iii.  Uncertainty to Future Litigants

In order to successfully rebut the presumption that Vermont law applies to his claim, Plaintiff must be able to demonstrate that the application of New York law, and the departure from the law of the locus state, would not cause uncertainty for future litigants.  Plaintiff claims

27

that application of New York law will not lead to any future uncertainty because companies like Defendant undertake "construction work in multiple states where [they are] potentially liable for the injuries sustained by workers, including the State of New York." *See* Dkt. No. 12-3 at 16. But this is the precise reason why abandoning the law of the locus state *would* create uncertainty for future litigants.

"Litigants, as business people, must be able to plan their affairs with some level of certainty when engaging in interstate commerce. Thus, meeting the reasonable expectations of the parties is . . . a predominant consideration in interest analysis." *Mihalic*, 363 F. Supp. 2d at 401. Defendant attempted to establish some level of certainty throughout its involvement in the project that led to Plaintiff's injury. Defendant's contract with Vermont Transco required Defendant to provide workers' compensation that met Vermont's standards. *See* Dkt. No. 9-3 at ¶ 7; Dkt. No. 9-4 at 9. Defendant's contract with Air2 made clear Air2's obligation to also provide workers' compensation that complied with Vermont law. *See* Dkt. No. 9-3 at ¶ 11; Dkt. No. 9-6 at 8. Plaintiff admits this, yet claims that Defendant would have no reasonable expectation that Vermont law would apply to Plaintiff's workers' compensation claim. *See* Dkt. No. 12-3 at 16.

Plaintiff's stance is internally inconsistent. It certainly offers no reasonable argument as to why a Vermont general contractor entering into an agreement with a Maryland subcontractor would expect a New York employee to be hired, become injured in Vermont, and apply the law of the employee's domicile to a workers' compensation claim. Plaintiff argues that employees should have the assurance that the law of their home state will apply while working out of state. This cannot be said to provide greater certainty to future litigants than the established rule that the law of "the only [s]tate with which both parties have purposefully associated themselves in a significant way" will be the law that governs their workers' compensation disputes. *Cooney*, 81

N.Y.2d at 74.  This is especially true in situations involving multistate corporations such as Defendant.  Since Plaintiff's approach would make the choice of laws analysis less consistent and more confusing, the third *Neumeier* rule's presumption that Vermont law applies to this case stands.


### 5.  *Limited Public Policy Exception Inapplicable*

Even in some instances in which the third *Neumeier* rule unambiguously indicates that the law of a non-forum jurisdiction should apply, New York courts allow for a limited public policy exception by which one party can still apply the law of the forum state.  *See Schultz*, 65 N.Y.2d at 202.

"The public policy doctrine is an exception to implementing an otherwise applicable choice of law in which the forum refuses to apply a portion of foreign law because it is contrary or repugnant to its State's own public policy."  *Id.* (citation omitted).  This exception "should be considered only after the court has first determined, under choice of law principles, that the applicable substantive law is not the forum's law."  *Cooney*, 81 N.Y.2d at 78 (citation omitted).  New York courts do not lightly use the public policy exception to override the conclusions of their usual choice of laws analysis; there is a "heavy burden" on the party seeking such an exception.  *See Schultz*, 65 N.Y.2d at 202.

"The party seeking to invoke the doctrine has the burden of proving that the foreign law is contrary to New York public policy.  It is a heavy burden for public policy is not measured by individual notions of expediency and fairness or by a showing that the foreign law is unreasonable or unwise."  *Id.* (citation omitted).  "In addition, the proponent must establish that there are enough important contacts between the parties, the occurrence and the New York forum

to implicate our public policy and thus preclude enforcement of the foreign law." *Id.* (citation omitted).

In the present matter, it is clear that Plaintiff cannot satisfy either requirement for this exception to apply.  In order to fulfill the first requirement, Plaintiff must prove that applying the foreign state's law "would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111 (1918).  Such a violation would have to be substantial in nature:

> [P]lainly not every difference between foreign and New York law threatens [New York's] public policy.  Indeed, if New York statutes or court opinions were routinely read to express fundamental policy, choice of law principles would be meaningless.  Courts invariably would be forced to prefer New York law over conflicting foreign law on public policy grounds.

*Cooney*, 81 N.Y.2d at 79 (citations omitted).  "[P]ublic policy is not measured by individual notions of expediency and fairness or by a showing that the foreign law is unreasonable or unwise." *Schultz*, 65 N.Y.2d at 202 (citation omitted).  In fact, the public policy exception should only be used in instances in which the laws of the foreign state are "truly obnoxious[.]" *Edwards*, 17 N.Y.3d at 327 (quoting *Cooney*, 81 N.Y.2d at 79) (internal quotation marks omitted).

Plaintiff has plainly fallen short of meeting this public policy exception requirement.  The New York Court of Appeals has specifically held that workers' compensation contribution rules, because of their recency, fall short of meeting the "deep-rooted" standard.  *See Cooney*, 81 N.Y.2d at 79.  Furthermore, New York has decided that there is nothing "unfair about . . . expand[ing] the definition of employer to include a general contractor; the general contractor stands as an additional source of compensation coverage in return for the benefit of the exclusivity clause." *Roach*, 146 A.D.2d at 93.  Although New York and Vermont diverge on the definition of a statutory employer, without any demonstration that Vermont's workers'

30

compensation law is "unfair," Plaintiff cannot establish that the law violates any "fundamental" or "deep-rooted" principles in New York's public policy.

Moreover, as discussed, the only contact between the parties, the occurrence, and New York is the fact that Plaintiff is a New York domiciliary. If this were sufficient to warrant application of the public policy "exception," it would not be an exception, but the rule any time a in which the plaintiff is domiciled in New York, the defendant is domiciled in another state, and the tort at issue occurred in a third state.

Based on the foregoing, the Court finds that public policy exception does not apply to this case and, therefore, the Court must apply Vermont law to Plaintiff's claims.

## IV. CONCLUSION

After undertaking the appropriate choice of laws analysis, the Court has determined that Vermont law applies to Plaintiff's negligence claim against Defendant.[3] As discussed, since Vermont law grants general contractors immunity from suit by the employees of their subcontractors, so long as workers' compensation benefits are available, and because workers' compensation benefits are available, Plaintiff's claim must be dismissed. As such, the Court

---

[3] Although not addressed by the parties, the contract between Vermont Transco, LLC and Defendant contained a choice of law provision. *See* Dkt. No. 9-4 at 10-11. Specifically, the provision provides that "[t]he Agreement is made under and shall be governed by and construed under the laws of the State of Vermont without regard to principles of conflicts of laws. Any litigation relating to the subject matter hereof shall be initiated and maintained exclusively in the courts of the State of Vermont, to include the Federal District Court sitting in Vermont, which courts shall have exclusive jurisdiction." *See id.* In the subcontract agreement entered into between Defendant and Air2, Air 2 "agrees to adhere to and be bound to the Contractor by all of the provisions in the General Contract and to the contract documents affecting Subcontractor's work hereunder, and, insofar as its work is concerned, to assume towards the Contractor all of the duties, obligations and liabilities that the Contractor assumes toward the Owner." *See* Dkt. No. 9-6 at 7.

grants Defendant's motion for summary judgment and directs the Clerk of the Court to enter judgment in Defendant's favor and close this case.

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 9) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint against Defendant is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: June 24, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge